## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JONATHAN M. MONK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 04-1358-SLR |
| | ) | |
| WARDEN RAFAEL WILLIAMS, and | ) | |
| PAM MINOR, | ) | Trial by Jury Demanded |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

### BACKGROUND

1) The Complaint in this prisoner civil rights action was filed on October 23, 2004 against Defendants Warden Raphael Williams ("Williams") and Pam Minor ("Minor") (collectively, "Defendants"). (D.I. 2). Defendants' Answer was filed on April 26, 2006. (D.I. 16).

2) While not explicitly stated, Plaintiff, in effect, alleges that he was subjected to retaliation for the exercise of his First Amendment right to practice his religion.

3) On September 12, 2006, Defendants filed and served Interrogatories and a Request for Production of documents directed to Plaintiff. (D.I. 19, 20). Plaintiff has not responded to that discovery.

4) Plaintiff was deposed on November 22, 2006. The deposition transcript is attached hereto as Exhibit A.

5)      This is Defendants' Memorandum and Points of Authorities in support of their Motion for Summary Judgment.

**FACTS**

In August 2004, Plaintiff was within the custody of the Delaware Department of Correction ("DOC") housed at Howard R. Young Correctional Institution. ("HRYCI"). He had been sentenced to serve a year for violation of probation, beginning in March 2004. Exhibit A at 7. The sentence was to be suspended upon Plaintiff's successful completion of the Key drug treatment program at HRYCI. *Id.* at 9. Plaintiff started the Key program in May, 2004. *Id.* at 32.

The Key program is a separate housing unit at HRYCI. In August 2004, the approximately 100 participants were housed in a dormitory setting. *Id.* at 10, 12.

On August 15, 2004, at about 8:00 p.m., Plaintiff, a Muslim, was praying beside his bunk. *Id.* at 10-11. Approximately 15-20 other inmates were also praying beside their bunks. *Id.* at 14. Plaintiff testified that, for the three months that he had been in the Key program, the Muslim inmates had been permitted to pray beside their bunks in this manner, although the prayer time coincided with the prison head count. *Id.* at 11. In general, during count, prisoners are supposed to be on their bunks. *Id.* at 16-17.

On this particular evening, an Officer Johnson came into the housing unit, and, apparently upon seeing the inmates praying, she called a Code 3, which, according to Plaintiff, is the code called when inmates are inciting a riot. *Id.* at 11. Plaintiff testified that approximately 20 officers responded to the code. *Id.* at 18. Plaintiff and a number of other inmates who had been praying were told to pack their possessions and were taken from the housing unit. *Id.* at 17, 20.

Plaintiff was briefly left at another housing unit, then he was taken to segregation. *Id.* at 21. Plaintiff testified that a Lieutenant Sabato told him that he was the ringleader of the incident in the Key housing unit. *Id.* at 21. Plaintiff spent 15 days in segregation. *Id.* at 23. He received a disciplinary charge related to the incident, and was found guilty of "Demonstrations." *Id.* at 23. Plaintiff did not appeal the guilty finding. *Id.* at 23-24.

After serving time in segregation, Plaintiff was transferred to a regular housing unit until he was released from prison in March 2005; he was never returned to the Key program. *Id.* at 24 – 25.

Plaintiff claims that he was never told why he wasn't returned to the Key program. *Id.* at 27, 31.

Plaintiff filed a grievance regarding the incident in the Key program, which was denied. *Id.* at 30. *See* Exhibit 1 to Exhibit A. He responded to this denial by filing the instant lawsuit. Exhibit A at 30.

With respect to damages, Plaintiff seeks loss of income for the additional time he spent in prison due to his removal from the Key program. He asserts that he would have completed the Key program in November 2004. Instead, he remained in prison until March 2005. *Id.* at 31 – 32. While he also seeks recovery for pain and suffering, he pointed only to the hardships experienced by family members due to his delayed release date. *Id.* at 35 – 36. He testified that he had no physical problems resulting from his removal from the Key program. *Id.* at 37.

Plaintiff stated that he named Williams as a defendant in this lawsuit because he is the warden of HRYCI and "the boss of everybody." *Id.* at 37, 38. In addition, Plaintiff claimed that the director of the Key program reported to him that Williams had said that

anyone who had a problem with being removed from the Key program should sue Williams. *Id.* at 37-38.

Plaintiff testified that he named Pam Minor as a defendant because she was the head of classifications, and therefore responsible for where inmates spend their time in prison. *Id.* at 38. Plaintiff never spoke with Minor. *Id.* at 38. His only contact with anyone related to Minor was an incident where, after he was moved from segregation, he was interviewed by someone who worked for Pam Minor. *Id.* at 24. He could not recall who that was. *Id.* at 27. He further stated that a member of Minor's staff told Plaintiff to sue Minor. *Id.* at 39. Finally, he testified that Minor had the final stamp of approval as to whether he returned to Key: "it's just like Rafael [sic] is the head of the institution, she is the head of her department." *Id.*

It is Plaintiff's position that he was removed from the Key program in retaliation for the practice of his religion. *Id.* at 35.

However, as set forth in the Affidavit of Pamela Minor, attached hereto as Exhibit B, Plaintiff was discharged from the program for reasons unrelated to his religious beliefs. His Discharge Summary from the Key program indicates that he did not respect authority and did not work diligently on his treatment objectives. *Id.* Further, he was found guilty of engaging in a Demonstration, which is a Class 1 disciplinary infraction and which implicates the security of the institution. This guilty finding increased his risk assessment points and increased his security level classification. *Id.*

Minor was part of the Institutional Based Classification Committee ("IBCC") that, on September 14, 2004, approved the recommendation of the Multi-Disciplinary Team ("MDT") that Plaintiff be discharged from the Key program. That approval was

based on the factors set forth herein. *Id.*

## ARGUMENT

I.    **STANDARD FOR SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56(c) provides that a party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A fact is material if its resolution will affect the outcome under the applicable law, and an issue about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When considering a Motion for Summary Judgment, the court must view the evidence in the light most favorable to the nonmoving party. *O'Donnell v. United States*, 891 F.2d 1079, 1082 (3d Cir. 1989). A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any..." which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 323-25 (1986). Once the movant satisfies this burden, the non-moving party must demonstrate to the court that sufficient evidence exists from which a jury might return a verdict in its favor. *Id.* The mere existence of some evidence in support of the non-moving party will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-moving party on that issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249.

For the reasons stated herein, Defendants are entitled to judgment as a matter of law because Plaintiff cannot present evidence which demonstrates any disputed genuine issue as to any material fact.

## II. DEFENDANTS ARE ENTITLED TO JUDGMENT ON PLAINTIFF'S RETALIATION CLAIM.

Plaintiff alleges that he was removed from the Key program in retaliation for practicing his religion. Government actions, which standing alone, do not violate the Constitution, may nevertheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right. *Allah v. Seiverling,* 229 F.3d 220, 224 (3d Cir. 2000).

The required elements of a prisoner claim for retaliation are set forth in *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001). First, a prisoner alleging violation of his Constitutional rights due to retaliation against him must show that "the conduct which led to the alleged retaliation was constitutionally protected." *Id.* at 333. For the purpose of this Motion only, Defendants do not dispute that the conduct in question, praying, was constitutionally protected.

Next, the prisoner must show that "he suffered some 'adverse action' at the hands of the prison officials." *Id.* The prisoner meets this requirement by showing that the action in question "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *Allah*, 229 F.3d at 225. In this case, the "adverse action" in question was Plaintiff's removal from the Key program.[1]

In *Hamilton v. Civigenics,* 2005 WL 418023, at *2 (D. Del. 2005) (attached hereto as Exhibit C), plaintiff claimed that he was removed from the Key program at

---

[1] Plaintiff does not allege that his right to practice his religion was impeded on any other occasion.

6

Sussex Correctional Institution in retaliation for filing a lawsuit. He also asserted that a Key program employee yelled at him, and that his home phone number was circulated throughout the prison building. *Id.* at *3. The court found that these allegations did not satisfy the second prong of the *Rauser* test, holding that "these events would not negatively sway a reasonable prisoner from" exercising his constitutional rights. *Id.*

Thus, in this case, Plaintiff's removal from the Key program does not constitute adverse action, and Plaintiff cannot satisfy the second requirement under *Rauser*.

The final prong of the *Rauser* test requires a prisoner to establish a causal link between the exercise of the constitutional right and the adverse action. *Rauser,* 241 F.3d at 333. This causal connection element requires a burden shifting analysis. The prisoner bears the initial burden of proving that his protected conduct was a "substantial or motivating" factor in the defendant's decision to take adverse action. *Id.* If the prisoner establishes this connection, the burden then shifts to the defendant to prove, by a preponderance of the evidence, that he would have taken the same action, absent the protected conduct. *Id.*

In determining whether there is a causal connection, the court should afford deference to the decisions of prison officials, due to the difficulties posed in administering a prison. *Id.* at 34. Thus, actions which impinge on the constitutional rights of an inmate are nevertheless valid if they are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

In this case, Plaintiff was discharged from the Key program for several reasons unrelated to the practice of his religion. His program participation was inadequate. Further, he was found guilty of a Class 1 disciplinary infraction, a finding that he did not

7

appeal. That disciplinary infraction involved participating in a demonstration, conduct posing a security risk to the institution, while Plaintiff was in the Key program housing unit.

Clearly, Plaintiff cannot meet the third requirement under the *Rauser* test. He cannot establish a causal link between the practice of his religion and his removal from the Key program. Plaintiff's removal from the program was reasonably related to legitimate penological interests.

Because Plaintiff cannot satisfy either the second or third requirements under *Rauser,* Defendants are entitled to judgment on Plaintiff's retaliation claim.

### III.   DEFENDANT WILLIAMS HAD NO INVOLVEMENT IN THE ALLEGED CONSTITUTIONAL VIOLATION.

The Third Circuit has held that a "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). *See also Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). Personal involvement can be shown through assertions of personal direction, or actual knowledge and acquiescence. *Rode*, 845 F.2d at 1207.

The Third Circuit has adopted a two part standard for determining whether to hold a supervisory official liable for a subordinate's constitutional tort. First, the plaintiff must identify with particularity what the official failed to do that shows deliberate indifference. Second, the plaintiff must establish a close causal link between the alleged failure and the alleged injury. *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). A supervisory public official may be held liable for a subordinate's constitutional tort only

where the official was the "moving force" behind the violation or exhibited "deliberate indifference to the plight of the person deprived." *Id.*

In this case, Plaintiff offers no particular allegations in support of a claim of deliberate indifference against Defendant Williams and shows no close causal link between Defendant Williams' conduct and Plaintiff's alleged injury.

Plaintiff admitted that he named Williams as a defendant because he was the Warden at HRYCI: "the boss of everybody" and "the head of the institution." Exhibit A at 37 - 39. He alleges absolutely no personal involvement by Williams in the events underlying his cause of action. He offers only that some other individual reported that Williams said that disgruntled Key participants should sue him. Clearly, this does not provide a basis for imposing liability on Williams. Plaintiff seeks to impose liability on Williams based purely on the theory of *respondeant superior*, which is precluded by Third Circuit jurisprudence.

There is no evidence that Williams was the "moving force" behind the alleged violation. Further, there is no evidence that he exhibited deliberate indifference to Plaintiff's situation. On these facts, there is no basis for holding Defendant Williams liable, and he is entitled to judgment as a matter of law.

### IV.     PLAINTIFF HAD NO CONSTITUTIONAL RIGHT TO PARTICIPATE IN THE KEY PROGRAM.

Plaintiff is, in effect, claiming that he had a right to participate in the Key drug treatment program. This argument is not supported by the law. Therefore, Defendants are entitled to summary judgment.

Neither Delaware law nor Delaware Department of Correction regulations create a liberty interest in a prisoner's classification status within an institution. 11 *Del. C.* §

6529(e). *See also Carrigan v. State of Delaware*, 957 F. Supp. 1376, 1385 (D. Del. 1997). Thus, the transfer of an inmate from one classification to another is unprotected by the Due Process clause even where the change in status involves a significant alteration in the conditions of confinement. *See Hewitt v. Helms*, 459 U.S. 460, 468 (1995). In *Brown v. Cunningham,* 730 F. Supp. 612, 614-615 (D. Del. 1990), the court held that an inmate's transfer from general population to administrative segregation, without being given notice and opportunity to challenge it, did not violate the inmate's liberty interests. *See also Skinner v. Carroll,* 2006 WL 2993192, at *4 (D. Del. Oct. 20, 2006) (inmate has no liberty interest in employment or treatment programs) (attached hereto as Exhibit D).

Because Plaintiff had no liberty interest in his participation in the Key program, his removal from the program does not establish a constitutional violation.

## V.    PLAINTIFF'S CLAIMS ARE BARRED BY THE PRISON LITIGATION REFORM ACT.

Plaintiff in this action brings a *pro se* complaint, filed while he was incarcerated, regarding the conditions of his confinement. The Plaintiff alleges claims under 42 *U.S.C*. § 1983. The Prison Litigation Reform Act ("PLRA") of 1995 became effective on April 26, 1996, and amended a variety of statutory provisions governing litigation by prisoners, specifically including those brought under 42 *U.S.C.* §1983. Accordingly, the PLRA is applicable to this matter.

### A)    PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES AS REQUIRED BY THE PLRA.

The PLRA contains an "exhaustion of remedies" requirement. 42 *U.S.C.* §1997e(a) provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

A plaintiff must exhaust administrative remedies even where the grievance process would not provide him with the remedy that he is seeking in his federal court action. *Booth v. Churner,* 206 F.3d 289, 294-295 (3d Cir. 2000), *aff'd,* 532 U.S. 731 (2001). *See also Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000) (holding that there is no "futility" exception to the prisoner exhaustion requirement).

The Third Circuit has held that the PLRA includes a "procedural default" component. Accordingly, an inmate is required to follow the grievance process through every appellate step in order to properly exhaust administrative remedies. *See Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004) (The PLRA's "goals are obviously served by a procedural default rule because such a rule prevents an end-run around the exhaustion requirement").

HRYCI[2] has a grievance process and procedure. *See* Exhibit E attached hereto. Pursuant to this procedure, while an inmate may apply to the court for judicial relief with respect to a grievance, he is required to "first exhaust all facility administrative grievance and appeal procedures." *Id.*

In this case, Plaintiff filed a grievance in connection with his removal from the Key program. The grievance was rejected. However, rather than pursuing an appeal of this decision, Plaintiff filed the instant lawsuit. Exhibit A at 30.

A plaintiff procedurally defaults when he fails to carry the grievance process to its administrative conclusion. *Id.* Thus, Plaintiff failed to exhaust his administrative

---

[2] HRYCI was previously called the Multi-Purpose Criminal Justice Facility.

11

remedies and is therefore barred from pursuing this action. For this reason, Defendants are entitled to summary judgment.

### B) PLAINTIFF IS NOT ENTITLED TO COMPENSATORY DAMAGES BECAUSE HIS CLAIM IS PURELY FOR EMOTIONAL INJURY.

The PLRA also mandates that an *in forma pauperis* plaintiff demonstrate physical injury as a pre-requisite to recovery for any mental or emotional injury. 42 *U.S.C.* § 1997e(e) states:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

The Third Circuit has interpreted § 1997e(e) to require more than *de minimis* injury.

> We believe that reading 1997e(e) to allow a plaintiff to allege any physical injury, no matter how minor, would produce an unintended (indeed absurd) result. Were we not to read 1997(e) as requiring more than a *de minimis* physical injury, we would turn its physical injury prerequisite into a mere pleading requirement, thereby rendering the requirement meaningless as a practical matter.

*Mitchell v. Horn*, 318 F.3d 523, 535 (3d Cir. 2003).

Plaintiff has admitted that he suffered no physical injury as the result of his removal from the Key program. Exhibit A at 37. Thus, Plaintiff cannot sustain a claim for compensatory damages, and Defendants are entitled to summary judgment on this issue.

## VI. UNDER THE ELEVENTH AMENDMENT, DEFENDANTS CANNOT BE HELD LIABLE IN THEIR OFFICIAL CAPACITIES.

"[I]n the absence of consent, a suit [in federal court] in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh

Amendment." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). This preclusion extends to state officials when "the state is the real, substantial party in interest." *Id.* at 101 (*quoting Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)). "Relief sought nominally against an [official] is in fact against the sovereign if the decree would operate against the latter." *Id.* (*quoting Hawaii v. Gordon*, 373 U.S. 57, 58 (1963)). A State may waive its Eleventh Amendment immunity. However, such waiver must constitute an "unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment." *Ospina v. Dep't of Corrections*, 749 F. Supp. 572, 578 (D. Del. 1990) (*quoting Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n.1 (1985)).

In this case, the State of Delaware has neither consented to Plaintiff's suit nor waived its immunity. Therefore, under the Eleventh Amendment, Defendants cannot be held liable in their official capacities.

WHEREFORE, for the reasons set forth herein, Defendants respectfully request that this Court grant summary judgment in their favor.

        STATE OF DELAWARE
        DEPARTMENT OF JUSTICE

        /s/ Eileen Kelly
        Eileen Kelly (#2884)
        Deputy Attorney General
        820 N. French Street, 6th Floor
        Wilmington, DE 19801
        eileen.kelly@state.de.us
        (302) 577-8400
        Attorney for Defendants

DATE: January 12, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2007, I electronically filed *Defendants' Memorandum of Points And Authorities In Support of Their Motion for Summary Judgment* with the Clerk of Court using CM/ECF.  I hereby certify that on January 12, 2007, I have mailed by United States Postal Service, the document to the following non-registered party:  Jonathan Monk.

/s/ Eileen Kelly
Deputy Attorney General
Department of Justice
820 N. French St., 6th Floor
Wilmington, DE 19801
(302) 577-8400
eileen.kelly@state.de.us