# EXHIBIT D



Slip Copy                                                                                                    Page 1

Slip Copy, 2006 WL 2993192 (D.Del.)
(Cite as: Slip Copy)

Skinner v. Carroll D.Del.,2006.Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Stuart J. SKINNER, Plaintiff,
v.
Warden Thomas CARROLL, Major Holmes, Deputy Warden Pierce, and S/LT. Porter, Defendants.
No. Civ.A.06 416 JJF.

Oct. 20, 2006.

Stuart J. Skinner, Smyrna, DE, pro se.

*MEMORANDUM OPINION*
FARNAN, J.
*1 Plaintiff Stuart J. Skinner, ("Skinner"), an inmate at the Delaware Correctional Center ("DCC"), filed this civil rights action pursuant to 42 U.S.C. § 1983. He appears *pro se* and was granted *in forma pauperis* status pursuant to 28 U.S.C. § 1915. (D.I.4.)

For the reasons discussed below, the Court will dismiss without prejudice the claims against Defendants Warden Thomas Carroll and S/Lt. Porter as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

I. THE COMPLAINT

Plaintiff alleges that he was housed in the minimum low security housing unit and on February 22, 2004, transferred to the security housing unit ("SHU") pending an internal investigation. The next day, Plaintiff was advised by Defendant S/Lt. Porter ("Porter") that he would be classified to SHU. On March 25, 2004, Plaintiff was advised by Lieutenant Pierce (now Deputy Warden Pierce ("Pierce")), who worked for Major Holman ("Holman"), that he was investigating Plaintiff for an attempted escape. Pierce found Plaintiff "not guilty" and advised Plaintiff that the next day he would be moved from SHU to the medium high housing unit ("MHU"), but Plaintiff was not transferred to MHU until three months later. When Plaintiff asked Pierce why he would not be transferred to the minimum security housing unit and returned to his job in the maintenance department, he was told that Holman had said to "let [Plaintiff] phase out."

On August 4, 2004, Plaintiff was transferred to the medium security housing unit and when he asked Pierce when he would be transferred back to the minimum security housing unit and return to work in the maintenance department, he was told to wait a few months for things to cool down. On October 11, 2004, Plaintiff wrote to Pierce in an effort to obtain a transfer to a different building and to get his job back. (D.I.2, Ex. 5.) On December 30, 2004, Plaintiff was transferred to a different building of the medium security housing unit. He again asked Pierce when he would be allowed to return to the minimum security housing unit and return to work in the maintenance department and was told to try to get a job in the kitchen.

Plaintiff filed a grievance on March 28, 2005, and requested a return to work and a return to the programs in the W-Building. The grievance was returned as "non-grievable." (D.I.2, Ex. 4.)

On August 4, 2005, Plaintiff was classified to the minimum security housing unit, but in early December he was transferred back to the medium security housing unit. Plaintiff was advised by Captain Hazard ("Hazard") that he had been returned to a higher security level because Holman had held up the classification at the Institutional Base Classification Committee ("IBCC"). Exhibits submitted with the complaint indicate that the IBCC reviewed Plaintiff's housing status on June 4, 2004, and January 12, 2006. (Ex. 6.) Plaintiff alleges he was told by Hazard that Holman was "messing"

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 2

Slip Copy, 2006 WL 2993192 (D.Del.)
(Cite as: Slip Copy)

with him. Plaintiff alleges that he had no write-ups and there was no reason for him not to return to the minimum security housing unit.

*2 Plaintiff appeared before the State Board of Pardons on October 27, 2005, and was represented by counsel. He alleges that the "attempted escape" disciplinary report had an adverse effect on his case even though he was found "not guilty." He alleges the attempted escape was used against him and that it continues to have a negative effect upon his institutional safety and well-being.

Plaintiff attached an excerpt from the findings of the State Board of Pardons, and it discusses the fact that Plaintiff was asked to address the "escape" write-up noting that Plaintiff was found "not guilty." The petition was denied due to opposition from the State, the victims' families, the Department of Correction, and the Board of Parole. (D.I.2, Ex. 7.)

Plaintiff alleges that on May 7, 2006, he was taken from his cell, all items were removed from the cell, and every item from the cell was searched. Plaintiff alleges that on the same date he was strip-searched. When he asked why this was occurring Plaintiff was told by the correctional officer that he "must have an enemy." Plaintiff also alleges he was told these actions "had something to do with an attempted escape." Plaintiff states, "I am certain that if this matter were to be investigated it would be proven that Major Holman is single-handedly responsible for this harassment and abuse of authority."

Plaintiff alleges that on June 9, 2006, his father spoke to Holman regarding Plaintiff's return to work and his father indicated that he planned to call the warden regarding the issue. Plaintiff alleges that Holman told Plaintiff's father that if he called the warden, Holman would "dig in and fight harder, even putting something in [his] cell to set [Plaintiff] up and have [him] sent back to the SHU."

Plaintiff seeks nominal, punitive, and compensatory damages. He also seeks injunctive relief in that he be reinstated to his former job, issued good time credits, and that he not be subjected to retaliatory conduct (i.e., placement in a lock-up unit or administrative segregation, or being subject to excessive shake-downs).

## II. STANDARD OF REVIEW

When a litigant proceeds *in forma pauperis*, 28 U.S.C. § 1915 provides for dismissal under certain circumstances. When a prisoner seeks redress from a government defendant in a civil action, 28 U.S.C. § 1915A provides for screening of the complaint by the Court. Both 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1) provide that the Court may dismiss a complaint, at any time, if the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief.

*Pro se* complaints are liberally construed in favor of the plaintiff. *Haines v. Kerner,* 404 U.S. 519, 520-521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The Court must "accept as true factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996) (citing *Holder v. City of Allentown,* 987 F.2d 188, 194 (3d Cir.1993)). An action is frivolous if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), and the claims "are of little or no weight, value, or importance, not worthy of serious consideration, or trivial." *Deutsch v. United States,* 67 F.3d 1080, 1083 (3d Cir.1995). Additionally, a *pro se* complaint can only be dismissed for failure to state a claim when "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Haines v. Kerner,* 404 U.S. 519, 520-521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

## III. ANALYSIS

### A. Respondeat Superior

*3 Plaintiff names as a defendant Warden Thomas Carroll apparently on the basis of respondeat superior. Supervisory liability cannot be imposed

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy   Page 3
Slip Copy, 2006 WL 2993192 (D.Del.)
(Cite as: Slip Copy)

under § 1983 on a respondeat superior theory. *See Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). In order for a supervisory public official to be held liable for a subordinate's constitutional tort, the official must either be the "moving force [behind] the constitutional violation" or exhibit "deliberate indifference to the plight of the person deprived." *Sample v. Diecks,* 885 F.2d 1099, 1118 (3d Cir.1989) (citing *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

The complaint contains no such allegations against Warden Carroll. Nor does it allege that he was the "driving force [behind]" Plaintiff's alleged constitutional violations or that he was deliberately indifferent to his plight. Even construing the complaint in the light most favorable to the Plaintiff, as the Court must do, it is evident that Warden Carroll was named as a defendant solely because of his supervisory/administrative position. Accordingly, the Court will dismiss without prejudice the claim against him pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b).

### B. Housing/Work Assignment

Plaintiff's main complaint is that his current housing status does not allow him to return to his job in the maintenance department. Plaintiff acknowledges that working is a privilege, but complains he did nothing to lose that privilege.

To be determined is whether Plaintiff's alleged housing violation implicates a constitutionally protected property or liberty interest. *See Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). "Liberty interests protected by the Fourteenth Amendment may arise from two sources-the Due Process Clause itself and the laws of the States." *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). In a prison setting, states may create protected liberty interests. These interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Sandin,* 515 U.S. at 484 (internal citations omitted).

Neither Delaware law nor DCC regulations create a liberty interest in a prisoner's classification within an institution. *See* Del.Code Ann. tit. 11, § 6529(e). Moreover, " '[a]s long as the conditions or degree of confinement to which [a] prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." ' *Hewitt,* 459 U.S. at 468 (quoting *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976)). Hence, it has been determined that the transfer of a prisoner from one classification is unprotected by " 'the Due Process Clause in and of itself," ' even though the change in status involves a significant modification in conditions of confinement. *Hewitt,* 459 U.S. at 468 (citation omitted); *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976); *see also Lott v. Arroyo,* 785 F.Supp. 508, 509 (E.D.Pa.1991) (plaintiff transferred from group home to correctional facility had no constitutionally enforceable right to participate in work release program); *Brown v. Cunningham,* 730 F.Supp. 612 (D.Del.1990) (plaintiff's transfer from general population to administrative segregation, without being given notice and opportunity to challenge it, was not violation of plaintiff's liberty interest). Based upon the foregoing, the decision to transfer Plaintiff to the various housing units cannot be viewed as falling outside the scope of "the sentence imposed upon him [or] otherwise violative of the Constitution."

*4 Similarly, under Delaware law a prisoner's work assignment is not a protected interest. Prisoners have no entitlement to a specific job, or even to any job. *James v. Quinlan,* 866 F.2d 627, 630 (3d Cir.1989). And, Delaware law does not create a liberty or property interest for prisoners in their work assignments. *Clough v. State,* 686 A.2d 158, 159 (Del.1996).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 4

Slip Copy, 2006 WL 2993192 (D.Del.)
**(Cite as: Slip Copy)**

Like his housing claim, in order for Plaintiff to state a claim that he was deprived of employment or treatment programs, he must have a property or liberty interest in the opportunity. *Id.* (citing *James v. Quinlan,* 866 F.2d 627, 629 (3d. Cir.1989)). The law is clear that there is no such interest. Accordingly, the claims based upon Plaintiff's change in housing [FN1] and employment have no arguable basis in law or in fact. The Court will dismiss them as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

> FN1. The housing claim is the only claim brought against Defendant S/Lt. Porter. Therefore, he will be dismissed from the case.

### C. Board of Pardons

Plaintiff appears to challenge the parole procedures in denying his petition. More specifically, he alleges that in denying him release, the State Board of Pardons wrongfully considered the alleged escape plan disciplinary report even though he was found "not guilty" of the charge.

Prisoners may utilize § 1983 to challenge the constitutionality of parole procedures in actions seeking declaratory and injunctive relief. *See Wilkinson v. Dotson,* 544 U.S. 74, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005). While there is no federal constitutional right to parole, states may create a parole entitlement protected by the Due Process Clause. *See Greenholtz v. Inmates of Nebraska Penal & Corr. Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). *See also Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987).

The Delaware parole statute does not create a liberty interest in parole. *Ross v. Snyder,* 239 F.Supp.2d 397, 401 (D.Del.2002). The statute authorizes the Board to reduce a prisoner's minimum term of parole eligibility, "when the Board is satisfied that the best interests of the public and the welfare of the person will be served by such reduction." *Id.* (quoting Del.Code Ann. tit. 11, § 4346(b)). Notably, the Board is given virtually unfettered discretion with regard to parole-release decisions. *Boyer v. Lichtenstader,* No. Civ. A. 97-363-GMS, 2000 WL 1239999, at *3 (D.Del. Aug.24, 2000).

In order to obtain relief, Plaintiff must show that he was deprived of a constitutional right by a person acting under the color of state law. 42 U.S.C. § 1983. The facts as alleged fail to state a claim upon which relief may be granted. Plaintiff has named neither the Board of Pardons nor any of its members as defendants. Additionally, Plaintiff has no protected liberty interest in the grant of parole. Finally, the exhibit of the Board's decision provides its reasons for denying parole, specifically that certain individuals and entities objected to the parole of Plaintiff.

Based upon the foregoing, the Court determines that the claim is frivolous and will dismiss it pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### V. CONCLUSION

*5 For the reasons discussed above, the Court will dismiss without prejudice the claims against Defendants Warden Thomas Carroll and S/Lt. Porter as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). Plaintiff will be allowed to proceed against Defendants Major Holman and Deputy Warden Pierce. An appropriate order will be entered.

D.Del.,2006.
Skinner v. Carroll
Slip Copy, 2006 WL 2993192 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.