IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JONATHAN MILTON MONK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 04-1358-SLR |
| | ) |
| WARDEN RAFAEL WILLIAMS and | ) |
| PAM MINOR, | ) |
| | ) |
| Defendants. | ) |

Jonathan Milton Monk, Wilmington, Delaware, pro se Plaintiff.

Eileen Kelly, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Defendants Warden Rafael William and Pam Minor.

**MEMORANDUM OPINION**

September 27, 2007
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Presently before the court is a motion for summary judgment filed by the State defendants Warden Rafael Williams ("Warden Williams") and Pam Minor ("Minor") (collectively "State defendants") against plaintiff Jonathan Milton Monk. (D.I. 25, 26) Pursuant to the court's order dated July 18, 2007, plaintiff's answering brief in response to defendants' motion for summary judgment was due August 17, 2007. (D.I. 34 at ¶ 3) Plaintiff has not filed any responsive papers. (D.I. 35) For the reasons set forth below, the court will grant the State defendants' motion for summary judgment.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff filed this 42 U.S.C. § 1983 lawsuit alleging he was removed from the Key drug treatment program ("the Key Program") on August 15, 2004, at Howard R. Young Correctional Institution ("HRYCI"), Wilmington, Delaware[1] for practicing Muslim prayer, and was denied re-entry into the program. (D.I. 2) This court summarizes plaintiff's complaint as a claim for retaliation based upon his practice of religion in violation of his First Amendment rights. Id. Plaintiff seeks monetary damages. Id.

The following facts are related to plaintiff's allegations. On August 15, 2004 at about 8:00 p.m., the plaintiff and fifteen to twenty inmates were praying beside their bunks in the Key Program's separate dormitory housing unit at HRYCI. (D.I. 26, ex. A at 10-14) The dormitory consisted of approximately 100 bunks. (D.I. 26, ex. A at 12) Officer Johnson entered the housing unit in order to perform the 8:00 p.m. head count

---

[1] The Key Program is a substance abuse rehabilitation program located in a separate housing unit at HRYCI. (D.I. 26, ex. A at 9) The State court ordered plaintiff to participate in the Key Program due to a drug relapse, which caused him to violate the terms of his probation. (D.I. 26, ex. A at 9-10)

and observed several inmates in prayer beside their bunks. (D.I. 26, ex. A at 11, 16) Officer Johnson only performs the head count on Sunday. (D.I. 26, ex. A at 11) Prisoners are required to sit on their bunks during the head count. Id. Plaintiff claims that Officer Johnson did not give an order for inmates to sit on their bunks during the head count. (D.I. 26, ex. at 16, 17) Plaintiff testified that Officer Johnson called a Code 3, which is the signal for an inmate riot in progress. (D.I. 26, ex. A at 11)

Plaintiff alleges that a squad of twenty officers responded to the Code 3. (D.I. 26, ex. A at 17, 18) Plaintiff and several other inmates who continued to pray were instructed to pack their belongings and were removed from the dormitory. Id. Plaintiff had "just finished" praying when the officers arrived. (D.I. 26, ex. A at 18) Plaintiff testified that he said to Officer Sabato, who was about to apprehend a praying inmate, "[c]ould you not do that? He is almost done." (D.I. 26, ex. A at 18) According to plaintiff, Key Program inmates had been permitted to pray beside their bunks during the prison head count for the past three months. (D.I. 26, ex. A at 11)

Plaintiff was taken from the Key Program dormitory to a separate holding area. (D.I. 26, ex. A at 21) Plaintiff was then placed in segregation for fifteen days for impermissibly leaving his cell to obtain hot water. Id. At some point, Officer Sabato accused plaintiff of being the "ring leader" of the Key Program incident. Id. Plaintiff was found guilty of the disciplinary charge of "demonstrations" in connection with the Key Program incident. (D.I. 26, ex. A at 23) Plaintiff did not appeal the charge, stating that he had time served for "being in the hole," and he desired to return to the prison population. (D.I. 26, ex. A at 24) Plaintiff alleges he was removed from the Key

2

Program due to prejudice stemming from certain Muslim religious sects that give Muslims a "bad wrap." (D.I. 26, ex. A at 35)

Plaintiff served the remainder of his sentence in the regular prison housing unit and never returned to the Key Program. (D.I. 26, ex. A at 24, 25) Plaintiff filed a grievance against his removal from the Key Program on the day of the Key Program incident. (D.I. 26, ex. A at 30) Prison administrators denied plaintiff's grievance and plaintiff did not appeal this decision. Id.

On September 14, 2004, defendant Minor approved the Multi-Disciplinary Team's ("MDT") recommendation to rescind the plaintiff's Key Program classification. (D.I. 26, ex. B at ¶ 6) An increased classification level decreases the number of programs in which a prisoner may participate. (D.I. 26, ex. A at 38) Plaintiff's reclassification disqualified him from continuing the Key Program for two reasons. First, the Key Program Discharge Summary stated that plaintiff "did not respect authority and did not work diligently on his treatment objectives." (D.I. 26, ex. B at ¶ 4) The Key Program Discharge Summary is dated August 20, 2004, five days after the Key Program incident. (D.I. 26, ex. B1 at 3) Second, plaintiff was found guilty of "demonstrations,"[2] which "increased his risk assessment points and increased his security level classification." (D.I. 26, ex. B at ¶ 5)

On September 30, 2004, plaintiff filed this suit in response to the denial of his grievance. (D.I. 26, ex. A at 30; D.I. 2) Plaintiff asserts that his removal from the Key

---

[2] The increase in plaintiff's classification level is evidenced on the Delaware Department of Correction ("DOC") Reclassification Form. (D.I. 26, ex. B3 at 2)

3

Program postponed his release from prison. (D.I. 2) Initially his release was scheduled for November 11, 2004; plaintiff was released from prison on March 5, 2005. Id.

**III. STANDARD OF REVIEW**

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it

has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A pro se complaint is liberally construed and held to a standard less stringent than formal pleadings. Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007). When an adverse party fails to respond to a summary judgment motion, Rule 56(e) requires the court to grant the motion only "if appropriate." Anchorage Assocs. v. V.I. Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990) (quoting Fed. R. Civ. P. 56(e)). The Third Circuit has treated a pro se complaint containing the statement "I declare under penalty of perjury that the foregoing is true and correct" as an affidavit for the purpose of opposing a summary judgment motion. Reese v. Sparks, 760 F.2d 64, 67 n.3 (3d Cir. 1985). The burden remains on the nonmoving party, not the court, to identify sufficient facts from the record that show the existence of a genuine issue for trial. Childers v. Joseph, 842 F.2d 689 (3d Cir. 1998). Summary judgment will be granted if the facts set forth by the moving party support a judgment as a matter of law. Anchorage Assocs., 922 F.2d at 175.

State defendants move for summary judgment on several grounds.[3] First, they claim they did not retaliate against plaintiff for practicing his religion in connection with the prison administration's decision to permanently remove him from the Key Program. Second, State defendants move for summary judgment because plaintiff failed to exhaust administrative remedies before filing the instant lawsuit. In addition, defendant

---

[3] State defendants' move for summary judgment based on their immunity from monetary damages when acting in their official capacity. The court will not address this argument, due to the grant of summary judgment on other grounds.

5

Warden Williams moves for summary judgment on the basis that he was not personally involved in, or the moving force behind, plaintiff's allegations.

## IV. DISCUSSION

### A. Retaliation

Plaintiff contends that his permanent removal from the Key Program is an act of retaliation for practicing his religion. Government action that does not violate the Constitution can amount to a constitutional tort if substantially motivated to punish an individual for exercising a constitutional right. Allah v. Seiverling, 229 F.3d 220, 224 (3d Cir. 2000). Proof of a retaliation claim requires that plaintiff demonstrate: (1) constitutionally protected conduct; (2) an adverse action by prison officials "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (citations omitted). After meeting the first two prongs, a burden-shifting framework is used by a prisoner-plaintiff to prove the causal link between the exercise of his constitutional right and the adverse action taken against him. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Plaintiff bears the initial burden of proving that his constitutionally protected conduct was a "substantial or motivating factor" in the decision to discipline him. Id. (citation omitted). The burden then shifts to the State defendants to prove by a preponderance of the evidence that they would have taken the same disciplinary action even in the absence of the protected activity. Id.

Deference is given to decisions made by prison officials. Rauser, 241 F.3d at 333 (citing Turner v. Safley, 482 U.S. 78, 89 (1987)). Even if a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, prison officials still may prevail by proving they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest. Id. at 334.

State defendants do not dispute that praying is a protected constitutional right. (D.I. 26 at 6) Therefore, plaintiff has met the first prong of the retaliation test. State defendants do dispute that plaintiff has satisfied the adverse action prong of Rauser. (D.I. 26 at 6-7) Plaintiff claims that when officers responding to the Code 3 entered the Key Program dormitory, he had "just finished" praying. (D.I. 26, ex. A at 18) At that time, plaintiff asked an officer not to disturb another praying inmate. (D.I. 26, ex. A at 18) It is clear from the record, therefore, that plaintiff's own conduct was not disturbed; he was defending the rights of another inmate to pray and was not deterred from praying himself.

In Hamilton v. Civigenics, No. 03-826 2005 WL 418023, at *2 (D. Del. Feb. 22, 2005), plaintiff alleged retaliation because he was removed from the Key Program subsequent to filing a lawsuit against the DOC. The Hamilton court held plaintiff's removal from the Key Program "would not negatively sway a reasonable prisoner from [the constitutional right of] pursuing redress in the court." Id. at *3. Based on this reasoning, the court similarly finds that the prison administrator's decision to remove plaintiff from the Key Program did not constitute an obstacle which would deter a person of ordinary firmness from exercising his constitutional right to practice religion.

7

Therefore, the adverse action of prong of the Rauser test is not satisfied,[4] and summary judgment is appropriate.

**B. Personal Involvement**

Defendant Warden Williams moves for summary judgment because he asserts he had no personal involvement in the conduct that forms the basis for plaintiff's allegations. "It is an established principle that the doctrine of respondeat superior is not an acceptable basis for liability under 42 U.S.C. § 1983." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Moody v. Kearney, 380 F.Supp.2d 393, 398 (D. Del. 2005) (citing Monell v. Dep't of Social Servs., 436 U.S. 658 (1978)). Under Third Circuit case law, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Liability of a supervisor under § 1983 occurs when the supervisor was the "moving force" behind the subordinates constitutional tort. Sample v. Diecks, 885 F.2d 1099, 1117 (3d Cir. 1989). A supervisory official is the "moving force" behind a cognizable constitutional injury when the "official's conduct [is] evidenced [by] deliberate indifference and . . . a close causal relationship between the identified deficiency and the ultimate injury." Id. at 1118. In order to establish supervisory liability, plaintiff must identify a specific supervisory practice or procedure that defendant failed to employ, that the existing custom or practice without that specific practice or procedure created an unreasonable risk of harm, that defendant was aware that this unreasonable risk existed, that

---

[4]Because plaintiff has not satisfied the second prong of Rauser, the court will not discuss the third prong of the retaliation test.

8

defendant was indifferent to that risk, and that plaintiff's harm resulted from defendant's failure to employ that supervisory practice or procedure. Id.

The record is clear that Warden Williams is named as a defendant solely based on his position as the Warden of HRYCI. The court finds that plaintiff has failed to produce sufficient evidence to show Warden Williams' personal involvement or that Warden Williams was the moving force behind the allegation of retaliation. As to Warden Williams, the court grants the motion for summary judgment on the basis of personal involvement.

### C. Exhaustion of Remedies

State defendants also move for summary judgment because plaintiff did not exhaust all administrative remedies prior to filing the instant lawsuit. The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.") Because an inmate's failure to exhaust under PLRA is an affirmative defense, the inmate is not required to demonstrate exhaustion or specially plead in his complaint. Jones v. Bock, 127 S. Ct. 910, 912 (2007). Failure to exhaust administrative remedies must be pled and proved by the defendant. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

Under § 1997e(a), "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n.6 (2001). Under Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006), exhaustion means proper exhaustion. That is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." Id. at 2384. As long as there is a shared factual basis between the two, perfect overlap between the grievance and a complaint is not required by the PLRA. See Woodford, 126 S. Ct. at 2388. The PLRA does not require the grievance and complaint to be identical, because inmates are required to complete the applicable administrative prison (such as a grievance procedure) even when seeking a form of relief that the prison cannot provide, so long as the prison can afford some sort of relief. See Booth v. Churner, 532 U.S. 731, 746 (2001).

The exhaustion requirement is absolute, absent circumstances where no administrative remedy is available. See Spruill v. Gillis, 372 F.3d 218, 227-28 (3d Cir. 2004); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000); Freeman v. Snyder, No. 98-636-GMS, 2001 WL 515258, at *7 (D. Del. Apr. 10, 2001) (finding that if no administrative remedy is available, the exhaustion requirement need not be met). However, if prison authorities thwart the inmate's efforts to pursue the grievance, administrative remedies may be presumed exhausted, as no further remedies are "available" to him. Brown v. Croak, 312 F.3d 109, 112-13 (3d Cir. 2002). The PLRA exhaustion requirement does not apply to prisoners who file a timely complaint after

10

release from prison, but does apply to prisoners who file a complaint while in prison and are subsequently released. Ahmed v. Dragovich, 297 F.3d 201, 210 (3d Cir. 2002).

State defendants rely upon the Standard Operating Procedures of the DOC effective January 1, 2001, to support their position that plaintiff did not follow the grievance procedures. (D.I. 26, ex. E) The DOC procedures provide that "[o]ffenders may apply through the courts for relief but should first exhaust all facility administrative and appeal procedures." (D.I. 26, ex. E) On August 15, 2004, plaintiff submitted a grievance alleging retaliation, which requested his return to the Key Program. (D.I. 26, ex. A1) Prison administrators denied plaintiff's grievance. (D.I. 26, ex. A at 30) Plaintiff failed to appeal the prison administration's decision. (D.I. 26, ex. A at 30) Accordingly, the court will grant the motion for summary judgment on the basis of failure to exhaust administrative remedies as to the August 15, 2004 grievance.

## V. CONCLUSION

Based on the aforementioned reasons, the court grants the State defendants' motion for summary judgment. An appropriate order shall issue.

11